UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL MAVITY,

       Petitioner,

                                    CASE NO. 2:07-CV-13955

   v.                               JUDGE DENISE PAGE HOOD

                                      MAGISTRATE JUDGE PAUL J. KOMIVES

PATRICIA CARUSO,

       Respondent.

_____/

## REPORT AND RECOMMENDATION

*Table of Contents*

I.      RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
II.     REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     A.     *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     B.     *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
     C.     *Exhaustion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
     D.     *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
     E.     *Validity of Plea/Ineffective Assistance (Claims I & II)* . . . . . . . . . . . . . . . . . . . . . . . . . 8
          1.     *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
          2.     *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
     F.     *Vindictive Prosecution/Double Jeopardy (Claim III)* . . . . . . . . . . . . . . . . . . . . . . . . . 15
          1.     *Vindictive Prosecution* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
          2.     *Double Jeopardy* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
     G.     *Recommendation Regarding Certificate of Appealability* . . . . . . . . . . . . . . . . . . . . . . . 20
          1.     *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
          2.     *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
     H.     *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
III.    NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

\*      \*      \*      \*      \*

I.      RECOMMENDATION: The Court should deny petitioner's application for the writ of

habeas corpus. If the Court accepts this recommendation, the Court should also deny petitioner a

certificate of appealability.

II.   <u>REPORT</u>:

A.   *Procedural History*

1.   Petitioner Daniel Mavity is a former state prisoner, currently on parole.  On August 6, 2004, petitioner was convicted of conspiracy to deliver and manufacture under 50 grams of cocaine; controlled substance, second offense; felon in possession of a firearm; and three counts of possessing a firearm during the commission of a felony, pursuant to his guilty plea in the Oakland County Circuit Court.  On November 5, 2004, he was sentenced to a term of ten months' to twenty years' imprisonment on the conspiracy conviction, a concurrent term of two years' imprisonment on the controlled substance conviction, a concurrent term of seven months' to ten years' imprisonment on the felon in possession conviction, and to a mandatory consecutive term of two years' imprisonment on the felony firearm convictions.

2.   Following his sentencing, petitioner filed a motion to withdraw his plea in the trial court.  The trial court denied the motion on July 6, 2005.

3.   Petitioner thereafter filed a delayed application for leave to appeal in the Michigan Court of Appeals, raising the following claims:

I.   THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING DEFENDANT-APPELLANT'S MOTION TO WITHDRAW HIS PLEA WHICH WAS BROUGHT ON THE BASIS THAT IT WAS INVOLUNTARILY, UNKNOWINGLY, AND UNINTELLIGENTLY GIVEN.

II.   DEFENDANT-APPELLANT WAS DEPRIVED OF HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED BY THE UNITED STATES AND MICHIGAN CONSTITUTIONS, WHEN HIS TRIAL ATTORNEY ERRONEOUSLY ADVISED HIM THAT THE GUN, AN INOPERABLE, ANTIQUE BLACK POWDER PISTOL, DID NOT FALL WITHIN THE FELONY FIREARM EXCEPTION, WHEN IN FACT, DEFENDANT COULD NOT HAVE BEEN CONVICTED OF FELONY FIREARM AS A MATTER OF LAW.

2

The court of appeals denied petitioner's application for leave to appeal in a standard order. *See People v. Mavity*, No. 263914.

4.      Petitioner, proceeding *pro se*, sought leave to appeal these two issues to the Michigan Supreme Court. The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. Mavity*, 477 Mich. 858, 721 N.W.2d 174 (2006).

5.      Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on September 19, 2007. As grounds for the writ of habeas corpus, he raises the two claims that he raised in the state courts, as well as an additional claim that the prosecutor engaged in malicious prosecution and subjected him to multiple punishments in violation of the Double Jeopardy Clause by charging him with three counts of felony-firearm.

6.      Respondent filed her answer on April 24, 2008. She contends that petitioner's third claim is unexhausted, and that the petition should be dismissed on this basis.

B.      *Factual Background Underlying Petitioner's Conviction*

Petitioner's convictions arise from multiple cases against petitioner, to which he pleaded guilty pursuant to a *Cobbs* agreement.[1] At the plea hearing, petitioner indicated that he was satisfied with the advice of his counsel. *See* Plea Tr., at 7. The court then explained to petitioner the charges to which he was agreeing to plead guilty, and that the maximum sentence on all the charges was fifteen years' imprisonment, as well as an additional two years' imprisonment on the felony firearm charge. The court also explained that the *Cobbs* agreement called for a sentence of two years' imprisonment on the felony firearm charges plus an additional 18 months' imprisonment on the

---

[1]*People v. Cobbs*, 443 Mich. 276, 505 N.W.2d 208 (1993), permits a defendant to plead guilty pursuant to the trial court's initial evaluation as to the appropriate sentence, subject to the defendant's right to withdraw his plea if the actual sentence imposed is more severe.

remaining charges.  Petitioner indicated that he understood the sentencing ramifications of his plea.

*See id*. at 7-9.  Petitioner also indicated that there was no agreement to reduce or dismiss any charge

in exchange for his plea.  *See id*. at 9.  The court then informed petitioner of the rights he was giving

up by pleading guilty, and petitioner indicated that he understood these rights and that he was

waiving them by pleading guilty.  *See id*. at 9-10.  Petitioner denied that anyone had threatened him

to induce his plea, and indicated that it was his own choice to plead guilty.  *See id*. at 10-11.  The

court then established a factual basis for the plea.  *See id*. at 11-14.  The court found petitioner's

pleas to be understanding, accurate, and voluntary, and accepted the pleas.  *See id*. at 14.

C.     *Exhaustion*

The federal habeas statute provides, in relevant part, that "[a]n application for a writ of

habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not

be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts

of the State[.]" 28 U.S.C. § 2254(b)(1)(A).  Thus, "[f]ederal habeas relief is available to state

prisoners only after they have exhausted their claims in state court."  *O'Sullivan v. Boerckel*, 526

U.S. 838, 839 (1999).  A petitioner has not exhausted his remedies "if he has the right under the law

of the State to raise, by any available procedure, the question presented."  28 U.S.C. § 2254(c).  To

satisfy the exhaustion requirement, a petitioner "must have 'fairly presented the substance of each

of his federal constitutional claims to the state courts.'" *Clinkscale v. Carter*, 375 F.3d 430, 437 (6th

Cir. 2004) (quoting *Hannah v. Conley*, 49 F.3d 1193, 1196 (6th Cir. 1995)).  A petitioner "fairly

presents" his claim to the state courts by either (1) relying upon federal cases employing federal

constitutional analysis; (2) relying upon state cases employing such an analysis; (3) phrasing the

claim in terms of federal constitutional law; or (4) alleging facts within the mainstream of federal

4

constitutional law. *See Clinkscale*, 375 F.3d at 437 (quoting *Newton v. Million*, 349 F.3d 873, 878 (6th Cir. 2003)). Further, the petitioner must fairly present the claim at each level of state court review. *See O'Sullivan*, 526 U.S. at 845-47.

Exhaustion is not required only if "(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(B). A "mixed petition," that is a petition which contains both exhausted and unexhausted claims, must be treated as unexhausted in its entirety. *See Rose v. Lundy*, 455 U.S. 509, 522 (1982). A federal habeas court has no authority to grant relief on even an exhausted claim where the petition also contains unexhausted claims. *See Rockwell v. Yukins*, 217 F.3d 421, 424 (6th Cir. 2000).

Here, petitioner's third claim was not presented to any state court, and thus it is unexhausted. However, assuming that petitioner's claims are partially unexhausted, the Court should nevertheless consider the claims on the merits. Despite the exhaustion requirement, a habeas petition "may be *denied* on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2) (emphasis added). Thus, a federal court may decide a habeas petition on the merits when the grounds for relief are without merit or are not cognizable on habeas review. *See Cain v. Redman*, 947 F.2d 817, 820 (6th Cir. 1991); *Prather v. Rees*, 822 F.2d 1418, 1421-1422 (6th Cir. 1987). In these circumstances, the court should dismiss the non-federal or frivolous claim on its merits to save the state courts the useless review of meritless constitutional claims. *See Cain*, 947 F.2d at 820. Here, as explained below, petitioner's claims are plainly meritless. Accordingly, the Court should deny the petition on that basis, rather than require further proceedings in the state courts.

D.    *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996).  *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*,

539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v.*

*Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

E.     *Validity of Plea/Ineffective Assistance (Claims I & II)*

Petitioner contends that his plea was involuntary because he could not have been convicted of the felony firearm charges. Specifically, he contends that the firearm was not a "firearm" for purposes of the felony-firearm statute, and that he was never in possession of the firearm. Petitioner contends that because he could not have been convicted of these charges, his plea was unintelligent and involuntary. He also contends that his trial counsel was ineffective for failing to challenge the felony-firearm charges on these bases. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.     *Clearly Established Law*

A plea of guilty is valid if it is entered voluntarily and intelligently, as determined under the totality of the circumstances. *See Brady v. United States*, 397 U.S. 742, 748-49 (1970); *King v. Dutton*, 17 F.3d 151, 153 (6th Cir. 1994). The Constitution requires, for a plea to be valid, that the defendant be informed of all direct consequences of his plea. *See Brady*, 397 U.S. at 755; *King*, 17 F.3d at 153. A solemn declaration of guilt by the defendant carries a presumption of truthfulness. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *Henderson v. Morgan*, 426 U.S. 637, 648 (1976). "The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge*, 431 U.S. at 74. Where the defendant "was fully aware of the likely consequences when he pleaded guilty[,] it is not unfair to expect him to live with those consequences[.]" *Mabry v. Johnson*, 467 U.S. 504, 511 (1984). Thus,

> [i]t is well settled that a voluntary and intelligent plea of guilty made by an accused
> person, who has been advised by competent counsel, may not be collaterally
> attacked.   It is also well settled that plea agreements are consistent with the
> requirements of voluntariness and intelligence--because each side may obtain
> advantages when a guilty plea is exchanged for sentencing concessions, the
> agreement is no less voluntary than any other bargained-for exchange.

*Id*. at 508 (footnotes omitted).

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense.  *Id*. at 687.  These two components are mixed  questions of law and fact.  *See id*. at 698.  Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."  *Id.* at 697.  If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed."  *Id.*

With respect to the performance prong of the *Strickland* inquiry, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance.  *See id*.  at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994).  "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted).  "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Id*. at 690.

With respect to the prejudice prong, the reviewing court must determine, based on the totality

9

of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695.  Where, as here, a petitioner challenges counsel's effectiveness with respect to a guilty plea, "in order to satisfy the 'prejudice' requirement, the [petitioner] must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see also*, *O'Hara*, 24 F.3d at 828.  However, with respect to the prejudice prong it is not enough for petitioner to merely allege that he would have insisted on going to trial had counsel properly advised him.  As other judges of this Court have explained:

> In the guilty plea context the petitioner must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 58-59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). Furthermore, this determination depends in large part on a prediction of what the outcome of a trial might have been. *Id*. at 58-60, 106 S.Ct. 366; *Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir.1994). In other words, the petitioner must show that, but for counsel's errors, he would not have pleaded guilty, because there would have been at least a reasonable chance he would have been acquitted. If examination of the totality of the circumstances shows that the petitioner would in all likelihood have been convicted of the same, or greater, charges after a trial, he cannot show that the advice to plead guilty prejudiced him. A petitioner's conclusory allegation that, but for an alleged attorney act or omission, he would not have pleaded guilty is not enough to prove such a claim. Petitioner must show that there is a reasonable probability that the result of the proceeding would have been different. It is not sufficient to show that, but for counsel's alleged errors he would have been convicted after a trial instead of after entering a guilty plea.

*Garrison v. Elo*, 156 F. Supp 2d 815, 829 (E.D. Mich. 2001) (O'Meara, J.); *see also*, *Thirkield v. Pitcher,* 199 F. Supp. 2d 637, 655 (E.D. Mich. 2002) (Friedman, J.) (same); *Holtgreive v. Curtis*, 174 F. Supp. 2d 572, 587 (E.D. Mich. 2001) (Hood, J.) ("If examination of the totality of the circumstances shows that the petitioner would in all likelihood have been convicted of the same, or greater, charges after a trial, he cannot show that the advice to plead guilty prejudiced him.").

10

2.      *Analysis*

Petitioner's involuntary plea and ineffective assistance claims both depend on his argument that he could not have been convicted of felony-firearm. The Court should reject this argument, and therefore conclude that petitioner's plea was valid and not the result of ineffective assistance of counsel.

Petitioner first contends that he could not have been convicted of felony-firearm because the gun found in his home was an antique, inoperable, muzzle-loader pistol. This claim is without merit. The Michigan felony-firearm statute provides, in relevant part: "A person who carries or has in his or her possession a firearm when he or she commits or attempts to commit a felony, except a violation of section 223, section 227, 227a or 230, is guilty of a felony, and shall be imprisoned for 2 years." MICH. COMP. LAWS § 750.227b(1). In support of his claim that an antique firearm is not a "firearm" under the statute, petitioner relies on § 750.231a, which in relevant part provides that "[s]ubsection (2) of section 227 does not apply . . . [t]o a person carrying an antique firearm as defined in subsection (2), completely unloaded in a closed case or container designed for the storage of firearms in the trunk of a vehicle." MICH. COMP. LAWS § 750.231a(1)(c). The statute further provides that "'[a]ntique firearm' means either of the following: (I) A firearm not designed or redesigned for using rimfire or conventional center fire ignition with fixed ammunition and manufactured in or before 1898, including a matchlock, flintlock, percussion cap, or similar type of ignition system or replica of such a firearm, whether actually manufactured before or after 1898[;] (ii) A firearm using fixed ammunition manufactured in or before 1898, for which ammunition is no longer manufactured in the United States and is not readily available in the ordinary channels of commercial trade." *Id*.§ 750.231a(2)(a). Petitioner contends that because the firearm found in his

11

home meets this definition of "antique firearm," he could not have been convicted under the felony-firearm statute.

Petitioner's argument fails, however, because § 750.231a by its terms provides an exception only to subsection (2) of section 227. That section prohibits carrying a concealed firearm. *See* MICH. COMP. LAWS § 750.227(2). However, petitioner was neither charged with nor convicted of carrying a concealed weapon under § 750.227(2). Rather, he was charged with and convicted of possessing a firearm during the commission of a felony under § 750.227b(1). Thus, by its terms the exception set forth in § 750.231a(1)(c) was inapplicable to the charges against petitioner. Further, the fact that the gun may have been inoperable was irrelevant; the Michigan courts have repeatedly held that possession of an inoperable firearm during the commission of a felony violates § 750.227b(1). *See People v. Peals*, 476 Mich. 636, 638, 641-54, 720 N.W.2d 196, 197, 198-205 (2006); *People v. Poindexter*, 138 Mich. App. 322, 333, 361 N.W.2d 346, 351 (1984); *People v. Bruach*, 126 Mich. App. 711, 714-16, 337 N.W.2d 642, 644 (1983) (per curiam). Because neither the antique nature of the firearm nor its alleged inoperability provided a defense to the felony-firearm charges, petitioner cannot show that counsel was ineffective or that his plea was unintelligent and involuntary.

Petitioner also contends that he could not have been convicted of felony-firearm because the firearm was not found in close proximity to the drugs and was not readily accessible because it was wrapped in a plastic bag, stored away, and unloaded. In support of his argument, petitioner relies on *People v. Myers*, 153 Mich. App. 124, 395 N.W.2d 256 (1986). In that case, the Michigan Court of Appeals found that the defendant's plea to a drug charge was illusory because it was entered in exchange for dismissal of a felony-firearm charge of which he could not have been convicted. The

12

court in *Myers* explained: "defendant was surrounded by police, handcuffed and confined in the living room, removed by 50 feet and a staircase from the gun cabinet in his bedroom, from the time the police entered the home and through the time the firearms were discovered. The weapons were neither in defendant's physical possession nor available and accessible to him.  Under these facts defendant could not, as a matter of law, be properly convicted of possession of a firearm during the commission of the charged felony."  *Id*. at 126, 395 N.W.2d at 257.

Notwithstanding *Myers*, the operative question under § 750.227b is not whether a defendant was in possession of a weapon at the time of his arrest, but whether he possessed the weapon during the commission of an underlying felony.  For this reason, the Michigan Court of Appeals has consistently refused to follow the *Myers* court's focus on accessability at the time of arrest.  *See People v. Williams*, 198 Mich. App. 537, 541, 499 N.W.2d 404, 406 (1993) (per curiam); *People v. Becoats*, 181 Mich. App. 722, 726, 499 N.W.2d 687, 689 (1989) (per curiam).  Thus, the question is whether, as a matter of law, the prosecution would not have been able to convict petitioner of possessing the weapon during the underlying crimes.  Petitioner has failed to make any such showing.  As the Michigan Supreme Court has explained, "possession" under § 750.227b may be either actual or constructive, and constructive possession is established "if the location of the weapon is known and it is reasonably accessible to the defendant."  *People v. Hill*, 433 Mich. 464, 471, 446 N.W.2d 140, 143 (1989).  And as observed by the Sixth Circuit, "[w]hile Michigan courts have yet to define exactly what constitutes reasonable accessibility, a review of the limited case law that addresses the issue indicates that it is not a difficult standard to meet."  *Thompson v. Bock*, 215 Fed. Appx. 431, 438 (6th Cir. 2007).  For example, the Michigan Court of Appeals has found the evidence sufficient to create a jury question, or to sustain a conviction, where weapons were found:

13

- inside a metal box which itself was located in a padlocked wooden safe in the basement of the defendant's home, *see Williams*, 198 Mich. App. at 541, 499 N.W.2d at 406;

- hidden under a mattress in the basement where both the defendant and drugs were discovered, *see People v. Devereaux*, No. 198585, 1998 WL 1991713, at *1 (Mich. Ct. App. May 26, 1998) (per curiam);

- stored in rooms in which the defendant was not located at the time of his arrest, *see Becoats*, 181 Mich. App. at 724-26, 449 N.W.2d at 688-89; *People v. Robinson*, No. 180849, 1997 WL 33347925, at *2 (Mich. Ct. App. May 23, 1997) (per curiam);

- in a dresser drawer in the defendant's bedroom, *see People v. Coit*, No. 157187, 1996 WL 33348830, at *2 (Mich. Ct. App. Nov. 12, 1996) (per curiam); *People v. Bibbs*, No. 203822, 1999 WL 33445330, at *2 (Mich. Ct. App. Apr. 30, 1999) (per curiam);

- hidden under articles of clothing in a room to which defendant had access, *see People v. Walker*, No. 278071, 2008 WL 2697724, at *2 (Mich. Ct. App. July 10, 2008) (per curiam); and

- in a room adjacent to the porch where the defendant took delivery of drugs, *see People v. Buckallew*, No. 214251, 1999 WL 33326765, at *2 (Mich. Ct. App. Dec. 28, 1999) (per curiam).

With this understanding of "possession" in mind, it is clear that there was sufficient evidence of defendant's possession of the firearm during the underlying felonies to allow the charge to be submitted to the jury and to allow the jury to find petitioner guilty of the felony-firearm counts. At the preliminary examination, Officer Eric Gruenwald testified that the gun was found on top of a dresser in a plastic bag, along with ammunition for the gun. He also testified that petitioner was located in the bedroom when the officers arrived, and it appeared petitioner slept in the bedroom. Further, the dresser abutted, and was easily accessible from, the bed. *See* Prelim. Exam. Tr., Vol. II, at 19-20, 27-28. In addition, Officer Kevin Cronin testified that petitioner admitted in his statement to Cronin that the gun was his. *See id.* at 55. In light of the case law discussed above, this

14

evidence was more than sufficient to provide a basis upon which a jury could conclude that petitioner possessed the gun during the commission of the underlying felonies.

Thus, neither § 750.231a nor the evidence presented at the preliminary examination provide a basis for concluding that petitioner could not have been convicted of the felony-firearm charges as a matter of law. While a jury might have acquitted him of those charges, petitioner's argument depends on his assertion that he *could not* have been convicted on those charges. A speculative assertion that he *would not* have been convicted cannot establish that petitioner's plea was involuntary or that counsel was ineffective. On the contrary, petitioner faced substantial criminal penalties if convicted as charged at trial, including a maximum statutory term of 15 years' imprisonment, plus an additional two year consecutive sentence on the felony-firearm convictions. By pleading guilty pursuant to a *Cobbs* agreement, petitioner limited his sentence to 18 months' imprisonment plus the additional two year consecutive sentence on the felony firearm conviction. The plea transcript shows that petitioner's plea was otherwise voluntary, and petitioner makes no claim that it was not. Because petitioner could, in fact, have been convicted of the felony-firearm charges as a matter of law, he cannot show that his plea was involuntary, unintelligent, or the product of counsel's ineffective assistance. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on these claims.

F.    *Vindictive Prosecution/Double Jeopardy (Claim III)*

In his third claim, petitioner contends that prosecution's felony-firearm charges were vindictively imposed because the prosecutor knew that the charges were improper as a matter of law. Petitioner also contends that the charges violated his right to be free from double jeopardy. The Court should conclude that these claims are without merit.

15

1.     *Vindictive Prosecution*

Petitioner contends that the prosecutor vindictively charged him with three counts of felony-firearm in order to induce his plea.  Because, according to petitioner, the prosecutor knew that these counts were invalid as a matter of law, his plea was invalid.  The Court should disagree.

Generally, a prosecutor has broad discretion in deciding when and what to prosecute.  As the Supreme Court has explained, "so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file . . . generally rests entirely in [the prosecutor's] discretion." *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978).  Nevertheless, the Due Process Clause of the Constitution prohibits the government from undertaking a prosecution based solely on a vindictive motive.  *See id.* at 363. "Because a claim of vindictive prosecution 'asks a court to exercise juridical power over a "special province" of the Executive,' courts must begin from a presumption that the government has properly exercised its constitutional responsibilities[.]" *United States v. Jarrett*, 447 F.3d 520, 525 (7th Cir. 2006) (quoting *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (quoting *Heckler v. Chaney*, 470 U.S. 821, 832 (1985))).  "This 'presumption of regularity' in prosecutorial decision making can only be overcome by 'clear evidence to the contrary,' The standard of proof 'is a demanding one.'" *Id.* (quoting *Armstrong*, 517 U.S. at 463-64).  In certain cases, a presumption of vindictiveness "may operate in the absence of any proof of an improper motive and thus may block a legitimate response to criminal conduct."  *United States v. Goodwin*, 457 U.S. 368, 373 (1982).  A presumption of vindictiveness arises in circumstances in which a reasonable likelihood of vindictiveness exists. *See Blackledge v. Perry*, 417 U.S. 21, 27 (1974).  Where the presumption of vindictiveness does not arise, the defendant bears the burden of proving actual vindictiveness. *See Wasman v. United States*,

16

468 U.S. 559, 569 (1984).

Here, petitioner claims that the charges filed against him and to which he pleaded guilty were motivated by the prosecutor's desire to secure his guilty plea.  As the Supreme Court has explained, a guilty plea is not "compelled and invalid under the Fifth Amendment whenever motivated by the defendant's desire to accept the certainty or probability of a lesser penalty rather than face a wider range of possibilities extending from acquittal to conviction and a higher penalty authorized by law for the crime charged." *Brady*, 397 U.S. at 751.  The Court in *Brady* did explicitly "make no reference to the situation where the prosecutor or judge, or both, deliberately employ their charging and sentencing powers to induce a particular defendant to tender a plea of guilty." *Id*. at 751 n.8. However, there is no evidence that the prosecutor vindictively employed his charging powers by charging crimes not supported by the evidence.  As noted above, there was evidence to support the felony-firearm charges, and the charges were not barred by the antique firearm exception in § 750.231a.  Further, as noted below, the multiple charges were not barred by the Double Jeopardy Clause.

As explained above, "so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file . . . generally rests entirely in [the prosecutor's] discretion." *Bordenkircher*, 434 U.S. at 364. Petitioner has presented nothing to show that the prosecutor was motived by an animus other than his assertion that the charges were not supported by probable cause and thus animus is the only logical explanation.  However, as just indicated the charges were supported by probable cause and not barred by § 750.231a, and "[a] mere allegation the government was" acting vindictively "is not enough to establish vindictiveness." *United States v. Hirsch*, 360 F.3d 860, 864 (8th Cir. 2004).  In

short, petitioner has offered nothing to show that the prosecutor's decision to prosecute him "was not based on the usual determinative factors a responsible prosecutor would consider before bringing charges." *Jarrett*, 447 F.3d at 525 (internal quotation omitted).  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

2.  *Double Jeopardy*

Petitioner also contends that his prosecution for multiple counts of felony-firearm based on the possession of a single gun violated his right to be free from double jeopardy, that the prosecutor knew that these multiple counts were improper, and that his plea was therefore invalid.  The Court should reject this claim.

The Fifth Amendment to the United States Constitution commands that no "person be subject for the same offence to be twice put in jeopardy of life or limb."  U.S. CONST. amend. V.  The Double Jeopardy Clause, which is applicable to the states through the Due Process Clause of the Fourteenth Amendment, *see Benton v. Maryland*, 395 U.S. 784, 794 (1969), provides three basic protections: "[It] protects against a second prosecution for the same offense after acquittal.  It protects against a second prosecution for the same offense after conviction.  And it protects against multiple punishments for the same offense."  *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969) (footnotes omitted).  "These protections stem from the underlying premise that a defendant should not be twice tried or punished for the same offense."  *Shiro v. Farley*, 510 U.S. 222, 229 (1994) (citing *United States v. Wilson*, 420 U.S. 332, 339 (1975)).

As noted above, the Double Jeopardy Clause prohibits a state from punishing a defendant twice for the same "offense."  However, "[f]or constitutional purposes, it makes no difference that the separate charges against [petitioner] grew out of the same transaction."  *Smith v. Sowders*, 848

18

F.2d 735, 739 (6th Cir. 1988). "Because the substantive power to prescribe crimes and determine punishments is vested with the legislature, the question under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent." *Ohio v. Johnson*, 467 U.S. 493, 499 (1984) (citations omitted). Thus, the question is whether the Michigan Legislature intended that the assault of two separate victims even though accompanied by only a single intent to harm one of the victims gives rise to separate criminal liability; if so, the "court's inquiry is at an end" and there is no double jeopardy violation. *Id.* at 499 n.8. In making this determination, the Court is bound by the Michigan courts' interpretation of state law. *See Rodgers v. Bock*, 49 Fed. Appx. 596, 597 (6th Cir. 2002); *Banner v. Davis*, 886 F.2d 777, 780 (6th Cir. 1989).

In *People v. Morton*, 423 Mich. 650, 377 N.W.2d 798 (1985), the Michigan Supreme Court considered whether a person, such as petitioner here, who commits multiple felonies as part of a continuous criminal transaction while possessing a single gun may be convicted of multiple counts of felony-firearm based on the existence of multiple predicate felonies. After examining the language of the statute, the Court held that the Michigan legislature intended for multiple felony-firearm convictions in this scenario: "We believe it clear that the Legislature intended, with only a few narrow exceptions, that every felony committed by a person possessing a firearm result in a felony-firearm conviction. Where, as here, the defendant is convicted of separate [crimes], we perceive no reason why he may not also be convicted of separate counts of felony-firearm." *Id.* at 656, 377 N.W.2d at 801. Or as the Michigan Court of Appeals, relying on *Morton*, has explained:

> By emphasizing that the punishment for a violation of MCL 750.227b is in addition to the punishment for the underlying felony and requiring that the sentence for the felony-firearm conviction be served consecutively to and preceding the sentence for the underlying felony, the Legislature indicated that it was more concerned with the underlying felonious conduct, which was rendered more dangerous by the presence of a firearm, than with the number of firearms involved. . . .

19

. . . .
Therefore, we conclude that the appropriate "unit of prosecution" is the felonious conduct rather than the number of firearms carried or possessed.

*People v. Uphouse*, 275 Mich. App. 158, 176, 737 N.W.2d 519, 530 (2007), *rev'd in part on other grounds*, 480 Mich. 939, 741 N.W.2d 21 (2007). Because this Court is bound by the Michigan courts' interpretation of state law in deciding the double jeopardy issue, *see Rodgers*, 49 Fed. Appx. at 597; *Banner*, 886 F.2d at 780, the "court's inquiry is at an end" and there is no double jeopardy violation. *Johnson*, 467 U.S. at 499 n.8. And because there is no double jeopardy violation, petitioner cannot show that the prosecutor's decision to charge him with multiple felony-firearm counts rendered his plea invalid.

G.     *Recommendation Regarding Certificate of Appealability*

1.     *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000). Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never

20

issue. Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84. Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable." *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue." FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory committee note, 2009 amendments. In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

2.    *Analysis*

If the Court accepts my recommendation regarding the merits of petitioner's claims, the

Court should also deny petitioner a certificate of appealability, for the reasons set forth above. Petitioner's plea validity, ineffective assistance, and vindictiveness claims rely entirely on his argument that he could not be tried and convicted of felony-firearm because of the antique firearm exception contained in § 750.231a and because he the gun was not readily accessible as a matter of law.  However, as explained above, by its plain language § 750.231a does not provide an exception to the felony-firearm exception, and Michigan case law makes clear that the firearm was reasonably accessible to petitioner as that term is used under state law.  And because the underlying state law does not support petitioner's contention that he could not have been convicted of felony-firearm, the resolution of his plea validity, ineffective assistance, and vindictiveness claims is not reasonably debatable.  Likewise, it is clear as a matter of state law that the Michigan legislature intended multiple punishments for possession of a single firearm during the commission of multiple felonies. Because the double jeopardy question comes down to a question of legislative intent, and because this Court is bound by the state courts' interpretation of Michigan law, the resolution of petitioner's double jeopardy claim is not reasonably debatable.  Accordingly, the Court should deny petitioner a certificate of appealability.

H.    *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law.  Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation,

but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 12/10/09

> The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on December 10, 2009.
>
> s/Eddrey Butts
> Case Manager

23